IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HANAMINT CORPORATION, INC., )
)
        Plaintiff, )
)
v. ) 1:06CV00450
)
ALLIANT MARKETING GROUP, LLC; )
HOME CASUAL ENTERPRISES, LLC; )
CASUAL HOME ENTERPRISES, LTD; and )
HOME CASUAL ENTERPRISES )
COMPANY, LTD, )
)
        Defendants. )

# MEMORANDUM OPINION

BEATY, Chief Judge.

This matter is before the Court on Motions to Dismiss for Lack of Personal Jurisdiction by Alliant Marketing Group, LLC ("Alliant") and Home Casual Enterprises, LLC ("HCE, LLC") [Document #12] and by Casual Home Enterprises, Ltd. ("CHE, Ltd.") and Home Casual Enterprises Company, Ltd. ("HCE, Ltd.") [Document #20] (collectively, "Defendants").[1] For the reasons discussed below, the Court concludes that it may properly exercise personal jurisdiction over Defendants in this case. Therefore, Defendants' Motions to Dismiss will be DENIED.

---

[1] Defendants Alliant and HCE, LLC filed their Motion to Dismiss first, and Defendants CHE, Ltd. and HCE, Ltd. later filed their own separate Motion to Dismiss which adopted the briefs and affidavits submitted in support of Alliant's and HCE, LLC's Motion. Therefore, the issues in both Motions presently before the Court are the same, and the Court will dispose of them in a single analysis.

I.  FACTUAL BACKGROUND

Plaintiff Hanamint Corporation, Inc. ("Plaintiff") is a company which is incorporated in Nevada but whose principal place of business is Greensboro, North Carolina. Plaintiff's business is the design, manufacture, and sale of collections of patio furniture throughout the United States. Plaintiff is the owner of all rights to United States Patent No. 7,044,064 ("'064 Patent"), entitled "Umbrella Table with Inlaid Turntable." Plaintiff brings this action for patent infringement pursuant to 35 U.S.C. § 271, for provisional patent royalties pursuant to 35 U.S.C. § 154(d), and for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1, *et seq.*, against Defendants for allegedly infringing on the '064 Patent by manufacturing and selling certain patio table collections, namely, Defendants' "River Delta II Collection" and "Catalina Outdoor Dining Collection."

Defendant Alliant is a Minnesota Corporation with its principal place of business in Eden Prairie, Minnesota. Defendant HCE, LLC is an Alabama Corporation with its principal place of business in Birmingham, Alabama. Defendants CHE, Ltd. and HCE, Ltd. are both Hong Kong companies. None of these Defendants directly transact business in North Carolina. However, based upon their operations in China, Defendants are in the business of designing, manufacturing, and selling outdoor furniture that is subsequently sold to retailers who are responsible for shipping the furniture from China to their own stores in the United States. In particular, Defendants Alliant and HCE, Ltd. have contracted to sell furniture directly to the retailer Wal-Mart. As a result of this arrangement, various Wal-Mart retail locations in North

Carolina have been offering for sale the allegedly infringing patio tables at issue in this case.

II.     MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants' Motions to Dismiss [Documents #12 and #20] both contend that Defendants do not have sufficient minimum contacts with North Carolina to support the exercise of personal jurisdiction consistent with due process because none of them directly manufacture, market, offer for sale, or sell anything in North Carolina.  Under Federal Circuit precedent, there are two inquiries to determine whether personal jurisdiction exists over an out-of-State defendant: (1) whether the forum State's long-arm statute permits the assertion of jurisdiction; and (2) if so, whether the exercise of jurisdiction would be consistent with the limitations of due process.  See Genetic Implant Sys. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359-60 (Fed. Cir. 2001).  North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, permits the exercise of personal jurisdiction to the full limits of federal due process.  See Dillon v. Numismatic Funding Corp., 291 N.C. 674, 675-76, 231 S.E.2d 629, 630-31 (1977); see also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., 304 F. Supp. 2d 769 (M.D.N.C. 2004) (noting that N.C. Gen. Stat. § 1-75.4(4) specifically authorizes jurisdiction when a foreign act causes a local injury, including an act of selling allegedly infringing products into North Carolina).  Therefore, the relevant inquiry is whether jurisdiction comports with due process.  See Genetic Implant, 123 F.3d at 1458; Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1270 (Fed. Cir. 1998).

Due process requires that the defendant have minimum contacts with the forum and that

the suit not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 2d 95 (1945). "The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum . . . [which] is desirable . . . [because] non-residents are thus able to organize their affairs, alleviate the risk of burdensome litigation by procuring insurance . . . and otherwise plan for the possibility that litigation in the forum might ensue." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994). The plaintiff bears the burden of establishing minimum contacts, after which the defendant may nevertheless avoid personal jurisdiction by showing that the suit would offend traditional notions of fair play and substantial justice. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) ("While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable"). In typical cases, courts will invoke the concepts of "specific jurisdiction" and "general jurisdiction" in order to determine whether a defendant's contacts with the forum State are adequate to justify the exercise of personal jurisdiction. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996). "Specific jurisdiction" permits the exercise of personal jurisdiction where the cause of action arises directly from the defendant's contacts with the forum State. Id. In the alternative, where the defendant's contacts are not related to the cause of action, the theory of "general jurisdiction" will permit the exercise of personal jurisdiction where the defendant's contacts are sufficiently continuous and systematic. Id.

In the present case, Plaintiff contends that this Court has personal jurisdiction over Defendants because they have contracted with Wal-Mart to establish a distribution channel designed to serve the United States furniture market, including the North Carolina market, and that Defendants purposefully deliver products into the stream of commerce with the reasonable expectation that they will be purchased by consumers in North Carolina. In cases such as this one, where Defendants' alleged contacts with the forum State are indirect and only the result of an intermediary distributorship arrangement, the Federal Circuit has explained that a "stream of commerce" theory is to be applied in lieu of the typical concepts of specific and general jurisdiction:

> Although [the specific versus general jurisdiction] distinction may be helpful in some fact situations, it is not useful here . . . The analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products is generally referred to as the "stream of commerce" theory.

Viam Corp., 84 F.3d at 427. "Under this theory, a defendant has minimum contacts with the forum when it purposefully ships a product into the forum [S]tate through an 'established distribution channel.'" Akeva L.L.C. v. Mizuno Corp., 199 F. Supp. 2d 336, 339 (M.D.N.C. 2002) (citing Beverly Hills, 21 F.3d at 1565).

In determining what constitutes an established distribution channel, it is sufficient that the defendant "[arrange] for [the] introduction of [a product] into the United States stream of commerce with the expectation (or at least the intention and hope) that [the product] will be

5

shelved and sold at numerous local outlets in diverse parts of the country." <u>Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.</u>, 647 F.2d 200, 203 (D.C. Cir. 1981) (quoted and cited with approval by the Federal Circuit in <u>Beverly Hills</u>, 21 F.3d at 1567). Indeed, it is not required that a foreign defendant exercise control of the distributing agent in order to show that an established distribution channel exists. <u>Akeva</u>, 199 F. Supp. 2d at 341 (noting that "absent in the [Federal Circuit's] <u>Beverly Hills</u> opinion is any mention of control of the importer . . . [p]laintiff need only show that [the defendant] created a distribution channel to exploit the North American market").

However, the Federal Circuit has not resolved the question whether the stream of commerce theory requires any additional conduct beyond simply placing a product into an established distribution channel. <u>Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.</u>, 395 F.3d 1315, 1322 (Fed. Cir. 2005). As the Federal Circuit explained in <u>Beverly Hills</u>, there are two competing views. Under the first view, in addition to placing a product into an established distribution channel, in order to establish the existence of minimum contacts, the plaintiff must also show that there was "an action of the defendant purposefully directed toward the forum State." <u>Beverly Hills</u>, 21 F.3d at 1566 (quoting <u>Asahi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032, 94 L. Ed. 2d 92 (1987)). In the Supreme Court case of <u>Asahi</u>, Justice O'Connor, speaking for the four Justices who subscribed to this additional conduct requirement, stated that examples of conduct adequate to meet that requirement are "designing the product for the market in the forum State,

6

advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi, 480 U.S. at 112, 107 S. Ct. at 1032. However, under a more liberal approach also supported by a plurality of Justices in Asahi, no additional conduct beyond the placing of the product into the stream of commerce through an established distribution channel is needed to establish minimum contacts. Id. at 117, 107 S. Ct. at 1034-35 (Brennan, White, Marshall, & Blackmun, JJ., concurring in part and concurring in the judgment). In light of this unresolved issue, the Federal Circuit's approach is to determine whether the factual circumstances presented to it satisfy both alternatives. See, e.g., Beverly Hills, 21 F.3d at 1566 ("[The Federal Circuit] need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing.")

In the present case, the Court notes that Defendants Alliant and HCE, Ltd. have admitted that they came to the United States and visited Wal-Mart's headquarters in Bentonville, Arkansas, where they negotiated an agreement with Wal-Mart whereby Defendants would manufacture the allegedly infringing furniture in China, after which time Wal-Mart would take delivery of the furniture in China and become responsible for shipping it to its own retail stores in the United States. (Aff. of Don Corning, Document #13, Attach. #1, p. 2.) Information that Plaintiff's counsel obtained from Wal-Mart's website explicitly indicates that HCE, Ltd. is in fact Wal-Mart's supplier of one of the infringing products at issue in this case and that HCE, Ltd. provides a one-year limited warranty of that product as sold at Wal-Mart. (Decl. of Robert D.

7

Mason, Document #16, Ex. L.) Furthermore, Plaintiff also has sufficiently alleged that the agreement between Wal-Mart and Defendants Alliant and HCE, Ltd. has resulted in several of the allegedly infringing products being sold in Wal-Mart stores throughout North Carolina. (Decl. of Robert D. Mason, Jr., Document #16, p. 3.) (stating that "[a]s of June 27, 2006, the Wal-Mart on East Hanes Mill Road in Winston-Salem, North Carolina had three sets of [an allegedly infringing product] . . . [t]he Wal-Mart on Kester Mill Road in Winston-Salem [, North Carolina] had at least five sets of [an allegedly infringing product,] . . . [the] Wal-Mart in Mooresville, North Carolina had four sets of [an allegedly infringing product,] and the Wal-Mart in Hickory, North Carolina had three sets of [an allegedly infringing product.]") Indeed, an agent of Plaintiff was actually able to purchase one of the allegedly infringing products from Wal-Mart in Greensboro, North Carolina on June 16, 2005. (Decl. of Robert D. Mason, Jr., Document #16, p. 4.)

Based upon the foregoing facts, the Court finds that Alliant's and HCE, Ltd.'s agreement with Wal-Mart created an established distribution channel through which Defendants could sell their products in the United States, including North Carolina. The Court further finds that Defendants knew or should have known when they entered into an agreement with Wal-Mart that North Carolina was a likely destination of their products. Cf. Akeva, LLC, 199 F. Supp. 2d at 341 (finding minimum contacts in North Carolina where defendant "established [a subsidiary] to develop the United States market, including North Carolina"); see also Beverly Hills, 21 F.3d at 1564 (finding that defendants knew or should have known that its products

8

would reach Virginia because it had an ongoing commercial relationship with a company that had six retail outlets in Virginia which, in total, carried for sale at least fifty-two of the accused products). With this knowledge, Defendants did actually place their allegedly infringing products into the stream of commerce, and those products ultimately made their way into at least five Wal-Mart stores throughout North Carolina.

Furthermore, the Court also notes that Defendants' interaction with North Carolina is not limited to simply placing their products into the stream of commerce through an established distribution channel. To the contrary, Defendants' conduct in this case also constitutes action purposefully directed toward the forum State adequate to satisfy Justice O'Connor's requirement of additional conduct as interpreted by the Federal Circuit. In particular, Plaintiff has produced for the Court's review a copy of an insert included with an allegedly infringing table which Plaintiff purchased from Wal-Mart in North Carolina on June 16, 2005. This information advises purchasers that customer service inquiries by North Carolina buyers are to be directed to Defendants at the email address of custserv@homecasual.net. (Decl. of Robert D. Mason, Document #16, Ex. V.) Moreover, Defendants have admitted that, around October 2005, two employees of Defendant Alliant visited the High Point Market, an international indoor furniture show held in High Point, North Carolina, "for the purpose of learning about market trends in furniture, fabric, color, and design." (Aff. of Don Corning, Document #13, Attach. #2, p. 2.) The Court notes that this gathering of information about trends in the North Carolina furniture market would certainly aid Defendants in designing products more likely to appeal to North

9

Carolina buyers. Thus, the Court finds that Defendants' actions indicate an intent on their part to specifically serve consumers in the North Carolina market.

In considering whether this evidence satisfies due process, the Court further notes that the Federal Circuit in <u>Beverly Hills</u> faced essentially the same evidence as is presently before this Court and found that the defendants' activities were sufficient to satisfy the requirement that a defendant engage in some purposeful contact with the forum in addition to simply placing the product into the distribution channel. In that case, Beverly Hills, a company in the business of designing ceiling fans, instituted a lawsuit in Virginia against a Chinese company and its New Jersey-incorporated importer alleging that the defendants infringed its patent. <u>Beverly Hills</u>, 21 F.3d at 1560. The defendants subsequently filed a motion to dismiss for lack of personal jurisdiction on the grounds that neither of them had assets, employees, or agents in Virginia, and that at no point did either of them directly transact business in Virginia. <u>Id.</u> In response, plaintiff Beverly Hills submitted essentially the same evidence as is presently before this Court: its private investigator had purchased one of the accused products from a store in Virginia, a manual accompanying the product identified one of the defendants as the source of the product, the product was accompanied by a warranty that the manufacturing defendant would honor, and numerous other stores in Virginia also carried the accused product for sale. <u>Id.</u> at 1560-61. After considering this evidence, the Federal Circuit found that "under either version of the stream of commerce theory . . . plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process." <u>Id.</u> at 1566.

Thus, following Federal Circuit precedent, as this Court is bound to do in resolving issues "intimately related to substantive patent law," the Court in this case finds that Defendants' conduct is adequate to satisfy either version of the stream of commerce theory. See id. at 1564. The Court makes this finding, in particular, based upon the fact that Defendants have traveled to North Carolina to conduct market research, and also that Defendants directly provide email-based customer service to consumers who buy their products from Wal-Mart in North Carolina. Plaintiff in this case has therefore shown based on these activities, as well as Defendants' general efforts to establish a distribution channel designed to serve the United States market, including the North Carolina market, that Defendants had fair warning that they might be sued in North Carolina. As such, the Court finds that Defendants' contacts with North Carolina are adequate to justify this Court's exercise of personal jurisdiction.

However, this conclusion with respect to the adequacy of Defendants' contacts with North Carolina does not end the personal jurisdiction inquiry. Indeed, due process also requires that Plaintiff's suit not offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S. Ct. at 158. "In other words, even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." Beverly Hills, 21 F.3d at 1568. Because Plaintiff has shown that there are minimum contacts sufficient to satisfy due process, Defendants now bear the burden of proving that the exercise of personal jurisdiction

11

would be unreasonable. Elecs. for Imaging, Inc., 340 F.3d at 1351-52. In this regard, Defendants have made no attempt to show that the exercise of personal jurisdiction over them would be unreasonable or otherwise offensive to traditional notions of fair play and substantial justice. Moreover, in this case, the Court finds that North Carolina has substantial interests in discouraging patent infringement within its borders and providing a forum for Plaintiff to litigate its cause of action in order to spare other states and Defendants the burden of multiple lawsuits. Beverly Hills, 21 F.3d at 1568 (finding that these state interests militated in favor of exercising personal jurisdiction). Although traveling to the United States to defend this lawsuit may impose some burden on Defendants, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." Beverly Hills, 21 F.3d at 1559 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294, 100 S. Ct. 559, 565, 62 L. Ed. 2d 490 (1980)). Therefore, in light of Defendants' failure to carry its burden to show unreasonableness and the existence of North Carolina's substantial interests in providing a forum for the instant lawsuit, the Court finds that the exercise of personal jurisdiction in this case would comport with all the requirements of due process and that such exercise of personal jurisdiction would not be unreasonable.

Finally, the Court notes that this analysis has focused on Defendants Alliant and HCE, Ltd., who have directly contracted with Wal-Mart in establishing and using a distribution channel in the United States. With respect to Defendant HCE, LLC, Defendants contend that HCE, LLC is an entity formed in 2005 by Defendant Alliant's sales manager Scott Crumrine,

and is merely a shell company that does not transact any business whatsoever and therefore should not be subject to personal jurisdiction in North Carolina. However, Plaintiff has presented a Dun & Bradstreet business information report to refute this contention which indicates that HCE, LLC has made $7,000,000.00 in sales since its inception in 2005. (Decl. of Robert D. Mason, Document #16, Ex. B, p. 2.) Similarly, Defendants also contend that Defendant CHE, Ltd. does not exist as a separate legal entity and is thus incorrectly named as a defendant in this action. However, CHE, Ltd. was separately served and service was accepted in Hong Kong for it as a separate entity.

The Court has considered these contentions but finds that, at this stage in the litigation, all of the Defendants appear connected in manufacturing and distributing the allegedly infringing products into the stream of commerce. To the extent that HCE, LLC may be an inactive entity that is not participating in this distribution channel, or that CHE, Ltd. may not be a separate entity with an identity apart from Alliant or HCE, Ltd., the Court finds that these issues involve factual determinations that are inextricably intertwined with the merits of this case and thus are more appropriately considered on the merits after the completion of discovery, not by a jurisdictional ruling. See South Carolina State Ports Auth. v. Silver Anchor, S.A., (Panama), 23 F.3d 842, 847 (4th Cir. 1994) (reversing district court, in part, because it improperly resolved a linchpin factual issue in a jurisdictional ruling instead of appropriately reserving that issue for a proceeding on the merits).

III. CONCLUSION

For the reasons discussed above, the Court concludes that personal jurisdiction exists over the Defendants in this case because of their relationship with Wal-Mart in the use of an established distribution channel into North Carolina and their purposeful contacts with North Carolina, as a result of which, they had fair warning that they might be sued in this State. To the extent that any specific Defendant contends that it is not liable to Plaintiff for any allegedly infringing activity, the Court will appropriately consider any such contention pursuant to a motion for summary judgment or at trial. Therefore, the Motions to Dismiss by Defendants Alliant and HCE, LLC [Document #12] and by Defendants CHE, Ltd. and HCE, Ltd. [Document #20] will be DENIED.

An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

This the 8th day of March, 2007.

United States District Judge